IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| POETIC LICENSE CAPITAL, INC., | CV-22-99-BLG-KLD |
| Plaintiff, | |
| v. | ORDER |
| ALI EBRAHIM, and JOHN DOES I-V, | |
| Defendants. | |

This matter comes before the Court on Defendant Ali Ebrahim's Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction (Doc. 14) and Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to meet the pleading standards set forth by Rule 9(b) and 15 U.S.C. § 78u-4(b)(3)(A) (Doc. 30). For the reasons discussed below, Defendant's Motion to Dismiss for lack of subject matter jurisdiction (Doc. 14) is denied as moot, and his Motion to Dismiss for failure to state a claim (Doc. 30) is granted in part and denied in part.

## I.    Background

Defendant Ali Ebrahim ("Ebrahim" or "Defendant") was a co-founder and officer of American Harvest Inc. ("AHI"), an industrial hemp and CBD oil

processing company based in Glendive, Montana. (Docs. 31 at 6; 26, ¶ 7). In 2019, Ebrahim solicited investors, including Plaintiff Poetic License Capital ("PLC" or "Plaintiff"), through a private stock offering. (Doc. 26, ¶ 8). On August 8, 2019, PLC invested $750,000 into AHI and executed a Series A Preferred Stock Purchase Agreement. (Doc. 26, ¶ 9). On May 31, 2022, AHI filed Chapter 11 bankruptcy in Montana. (Doc. 26, ¶ 14). PLC has since learned that several entities affiliated with AHI have also filed for bankruptcy in Montana. (Doc. 26, ¶¶ 14, 15). AHI intends to liquidate and cease operations, rendering PLC's stock worthless. (Doc. 26, ¶ 16).

PLC filed its initial Complaint on September 14, 2022, alleging state law violations of the Montana Securities Act. (Doc. 1). On March 3, 2023, Defendant filed a Motion to Dismiss PLC's initial Complaint for lack of subject matter jurisdiction. (Doc. 14). On April 23, 2023, PLC filed the FAC—now the operative pleading—realleging its claims under the federal Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b). (Doc. 26). On May 12, 2023, Ebrahim moved to dismiss the FAC for failure to plead a cognizable claim under the heightened pleading standards for securities fraud actions. (Doc. 30).

## II.    Legal Standard

Section 10(b) of the Exchange Act makes it unlawful "for any person, directly or indirectly…[t]o use or employ, in connection with the purchase or sale

of any security…any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. §§ 78j, 78(b). Rule 10b-5, promulgated under Section 10(b), prohibits making "any untrue statement of a material fact" or omitting material facts "necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). To establish a private right of recovery for federal securities fraud violations, the plaintiff must allege the following: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) transactional causation; (4) actual reliance; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008).

Claims sounding in securities fraud are subject to the heightened pleading standards set forth by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Glazer Capital Management, L.P. v. Forescout Technologies, Inc. (Glazer II)*, 63 F.4th 747, 765 (9th Cir. 2023). Rule 9(b) requires that "a party [] state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The PSLRA raised the pleading requirements by requiring that plaintiffs plead scienter by "stat[ing] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The

PSLRA imposes "formidable pleading requirements to properly state a claim and avoid dismissal" under Rule 12(b)(6). *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).

The Supreme Court has provided three points of instruction to assist in determining whether this standard has been satisfied: (1) "courts must, as with any [12(b)(6) motion to dismiss…, accept all factual allegations in the complaint as true"; (2) "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss"; and (3) "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *In re NVIDIA Corp. Securities Litigation*, 768 F.3d 1046, 1052 (9th Cir. 2014) (quoting *Tellabs*, *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007)).

## III.     Discussion

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

PLC's initial Complaint alleges state law violations of the Montana Securities Act, invoking this Court's diversity jurisdiction on the basis that PLC is a citizen of Ontario, Canada, and Ebrahim is a citizen of Dubai, United Arab Emirates. (Doc. 1, ¶¶ 1–2). Ebrahim challenges jurisdiction on the basis that neither party is a citizen of the United States, maintaining that "[i]t has long been

established that '[d]iversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants.'" (Doc. 15 at 2–3) (quoting *Hayday Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1238 (9th Cir. 2022)).

The FAC realleges claims under the Exchange Act, thereby raising federal question jurisdiction pursuant to 28 U.S.C. § 1331. (Doc 24). Ebrahim does not renew his motion to dismiss PLC's initial Complaint. (Doc. 31 at FN 1). Therefore, because the FAC establishes jurisdiction under 28 U.S.C. § 1331, the Court denies Ebrahim's Motion to Dismiss for lack of subject matter jurisdiction (Doc. 14) as moot.

### B.  Motion to Dismiss for Failure to State a Claim

In Count I of the FAC, PLC alleges Ebrahim made several actionable misstatements or omissions pertaining to AHI's financial viability and corporate structure during the 2019 solicitation of investment. The allegations are set forth in Paragraphs 10(a)–(f) of the FAC, and PLC avers that each allegation constitutes a violation of the Exchange Act. (Doc. 26, ¶¶ 20, 22). Because these allegations constitute a central issue in this motion, they are restated verbatim below for context and clarity.

> **Paragraph 10(a) –** The Defendant overstated the financial health and status of AHI both verbally and through documents presented to Plaintiff in the solicitation of the investment. The Defendant verbally misrepresented the value of AHI to be approximately $150 million at that time. The company financial records, which were never shared with the Plaintiff but later obtained in the recent AHI bankruptcies established this representation to be

patently false. As of May 31, 2019, the companies balance sheet showed AHI's net worth to be -$350,085.10. (Doc. 26, ¶ 10(a)).

**Paragraph 10(b) –** The Defendant did not disclose the existence of affiliated or subsidiary companies, including the financial obligations and relationships between these entities, and how assets were held by these other entities. These entities include but are not limited to: ITC Grain International, Inc., ITC International, Inc., ITC International Holdings, Inc., ITC Terminal Inc., and Fortune Properties, LLC.

The Defendant both verbally and in the materials presented to potential investors represented that AHI had recently purchased the production facility in Sidney, Montana and had a lease with an option to buy the production facility in Glendive, Montana. That was false. The Sidney property was actually purchased by ITC Grain International, Inc. The Glendive property was in the process of being purchased by Fortune Properties, LLC and did close shortly after the Plaintiff made its investment into AHI. How these properties were owned has an impact on their disposition in the bankruptcy proceedings.

The Plaintiff has recently learned that AHI had a loan payable to ITC International in the amount of $2,514,546.60, which was not disclosed by the Defendant during the solicitation of investment from Plaintiff. This loan is believed to have been paid off with investment funds from investors, such as the Plaintiff. (Doc. 26, ¶ 10(b)).

**Paragraph 10(c) –** The Defendant both verbally and in the materials presented to potential investors represented:

- "AHI is one of the first industrial scale companies focused on hemp derived CBD in the U.S."

- "AHI harvested over 1,000 acres in CY2018, with contract farmers ready to seed and cultivate 5,000 acres in CY2019."

- "AHI has access to over 100,000 acres today."

- "AHI projected that it would harvest 5,000 acres in 2019 to generate $85.1 million in revenue and $30.91 in profit."

- "AHI projected that it would harvest 10,000 acres in 2020 to generate $180.2 million in revenue and $61.81 million in profit."

- "AHI projected that it would harvest 20,000 acres in 2021 to generate $305 million in revenue and $123.63 million in profit."

- "AHI projected that it would harvest 50,000 acres in 2022 to generate $531.6 million in revenue and $309.06 million in profit."

Based on records produced by AHI in the bankruptcy proceedings, these representations were not only false, but there was no objective basis for these types of projections given AHI's actual records of production, revenue, and income. (Doc. 26, ¶ 10(c)).

**Paragraph 10(d)** – The Defendant both verbally and in the materials presented to potential investors represented:

- "AHI has developed proprietary equipment capable of harvesting the entire plant on an industrial scale."

- "AHI has also developed proprietary processing and extraction equipment which increases throughput and CBD recovery at any scale."

- "AHI holds several unique pieces of IP across the supply chain."

- "AHI has developed several unique pieces of IP that will drive its industrial scale operations."

- "AHI is combining large scale farming with proprietary technology across the entire supply chain to produce CBD and industrial hemp products at a lower cost than the competition."

Based on the asset schedules disclosed by AHI in the bankruptcy proceedings, these representations were false or grossly exaggerated. (Doc. 26, ¶ 10(d)).

**Paragraph 10(e)** – The Defendant made representations to the Plaintiff that $15 million to $20 million was being raised through

the preferred stock sale verbally and in the materials disseminated in the solicitation of the investment. In the financial statements produced by AHI in the bankruptcy proceedings the books show a total of $18,083,210.55 preferred stock. In the materials produced by AHI in the bankruptcy proceedings, it appears on paper that Defendant, through TFIAH Holdings and Investments Ltd, purchased the following:

- 10,000,000 shares @ $4,000,000.00

- 5,460,483 shares @ $2,184,193.00

- 2,500,000 shares @ $1,000,000.00

- 2,500,000 shares @ $1,000,000.00

- 3,125,000 shares @ $1,250,000.00

- 2,294,000 shares @ $917,910.40.

Based on the accounting and banking records provided in the bankruptcy proceedings, the Defendant misrepresented the amount actually raised through the round of investment and whether certain funds were ever actually invested into the Company. (Doc. 26, ¶ 26(e).

**Paragraph 10(f)** – The Defendant represented that the funds raised from stock sale would be used "to ensure AHI has the equipment and facilities required to harvest, process, and extract 10,000 acres of hemp per annum." Based on the accounting records, the schedules, and disclosures, AHI provided in the bankruptcy proceeding, it appears the Defendant used the investment funds in a manner inconsistent with the representations made by the Defendant. (Doc. 26, ¶ 10(f)).

In Count II, PLC alternatively argues that Ebrahim is jointly and severally liable for any fraud or misrepresentations perpetrated by "other individuals" associated with AHI. (Doc. 26, ¶ 36). Finally, in Count III, PLC names fictitious

defendants in the event it is determined that other parties are legally responsible for the unlawful conduct.

Ebrahim moves to dismiss the FAC for failure to state a claim for relief and for failure to comply with heightened pleading requirements for securities fraud actions. (Doc. 30). Specifically, Ebrahim claims that the FAC (1) fails to identify the alleged misrepresentations and provide sufficient factual support to demonstrate falsity, (2) fails to adequately plead scienter, (3) fails to adequately plead loss causation, and (4) fails to plead a plausible theory of control person liability. (Doc. 31 at 14). The Court will address each argument in turn.

### i. Material Misrepresentation or Omission

The Court begins with materiality. A misrepresentation or omission is material "if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had not been disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946–47 (9th Cir. 2005). Materiality in fraud allegations "is intimately bound up with the concept of reliance." *In re McKesson HBOC, Inc. Securities Litigation*, 126 F. Supp. 2d 1248, 1260 (N.D. Cal. 2000).

PLC principally relies on *Livid Holdings*, in which the plaintiff purchased several million dollars' worth of shares in a closely held company based on the defendants' offering memorandum. 416 F.3d at 945–46. The memorandum stated

that the private-equity fundraising had been completed when only a fraction of it had, in fact, been completed; the company then entered bankruptcy proceedings, at which time the plaintiff discovered the memorandum was misleading. *Livid Holdings*, 416 F.3d at 944–51. The court determined that had this misrepresentation not been made, the plaintiff would have believed the defendants' financial status was closer to the actual net worth of -$743,646 instead of the $24.2 million represented in the memorandum. *Livid Holdings*, 416 F.3d at 947. The court held the plaintiff had "sufficiently pled materiality by raising a substantial likelihood that a reasonable investor would not have purchased the stock after learning the company's actual valuation." *Livid Holdings*, 416 F.3d at 946–47.

Like *Livid Holdings*, PLC argues, Ebrahim grossly overstated AHI's financial status and "radically altered the picture of [Defendant's] overall economic health and viability." (Doc. 32 at 12) (quoting *Livid Holdings*, 416 F.3d at 947). Had it known the real financial picture, PLC maintains, it would not have invested into AHI nor invested the amount that it did. (Doc. 21, ¶¶ 30–31). Like *Livid Holdings*, PLC has sufficiently pled materiality by raising a substantial likelihood that it would not have invested into AHI had it known the real financial picture.

Turning to the alleged misrepresentations, PLC repeatedly claims that Ebrahim "both verbally and in the materials presented" misrepresented aspects of

AHI's financial condition and corporate structure. (*See* Doc. 26, ¶ 10(a)–(f)). Ebrahim asserts that—apart from the written materials drawn from the 2019 investor presentation—PLC fails to plead necessary details about timing, substance, or source of the alleged verbal statements. (Docs. 31 at 18; 33 at 6). The only substantive allegations, Ebrahim contends, come from the written investor materials. (Doc. 33 at 5). In response, PLC restates the allegations contained in Paragraph 10 of the FAC, maintaining that "it is disingenuous for the Defendant to repeatedly claim this Complaint is lacking the 'who, what, when, where, and how of it.'" (Doc. 32 at 12).

Ebrahim is correct in that in allegations of fraud, a complaint must aver with sufficient detail the "time, place, and content" of the misconduct charged. *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1547–48 (9th Cir. 1994). Ebrahim argues the allegations contained in Paragraph 10 of the FAC are derived from the written investor materials and not from any verbal representations. (Doc. 33 at 5). However, whether the alleged misrepresentations were verbal or written presents an issue of fact. At the motion to dismiss stage, the Court need only consider whether the alleged misrepresentations or omissions are adequately pled. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (in deciding a motion to dismiss, the court accepts all factual allegations as true). Because PLC

identifies the speaker, the time period, and the content of the alleged statements or representations, the Court finds that PLC has adequately pled misrepresentation.

The question, now, is whether PLC makes an adequate showing of falsity. To allege fraud with particularity, a federal securities fraud complaint must offer an "explanation" as to why each statement or omission "was false or misleading" when made. *In re GlenFed*, 42 F.3d at 1547–48. Ebrahim argues that PLC fails to properly identify the bankruptcy records, disclose the records' substance, or offer any analysis as to their meaning. (Doc. 33 at 7). As noted above, PLC responds by restating the allegations set forth in Paragraph 10(a)–(f) of the FAC, maintaining that it has "set forth with specificity each misrepresentation or omission and the manner in which it has been proven false." (Doc. 32 at 18).

The Court finds that the allegations contained in Paragraphs 10(a), (b), and (e) plead falsity with sufficient particularity. Paragraph 10(a) alleges that while soliciting investments in 2019, Ebrahim verbally represented the value of AHI to be approximately $150 million; however, company balance sheets introduced during the bankruptcies showed AHI's net worth to be -$350,085.10 as of May 31, 2019. (Doc. 26 ¶ 10(a)). PLC claims in Paragraph 10(b) that Ebrahim represented AHI had recently purchased a production facility in Sidney, Montana, and had a lease with an option to buy a facility in Glendive, Montana; however, the facilities were purchased by previously undisclosed subsidiary or affiliated companies.

(Doc. 26, ¶ 10(b)). Finally, in Paragraph 10(e), PLC alleges that while Ebrahim represented it had raised $15 million to $20 through a preferred stock sale, materials produced during the bankruptcy show that the previously undisclosed affiliated entities purchased several rounds of stock. (Doc. 26 ¶ 10(e)). By identifying specific contradictory information and examples, PLC has averred falsity with sufficient particularity.

However, the allegations contained in Paragraphs 10(c), (d), and (f) fail to meet this standard. Paragraph 10(c) broadly asserts that "[b]ased on the records produced by AHI in the bankruptcy proceedings, these representations were not only false, but there was no objective basis for these types of projections given AHI's actual records of production, revenue, and income." (Doc. 26 ¶ 10(b)). Paragraph 10(d) similarly alleges that "[b]ased on the asset schedules disclosed by AHI in the bankruptcy proceedings, these representations were false or grossly exaggerated." (Doc. 26 ¶ 10(d)). Finally, Paragraph 10(f) alleges that Ebrahim "used the investment funds in a manner inconsistent with the representations made by the Defendant." (Doc. 26 ¶ 10(f)). These paragraphs fail to show why the statements were false when made or explain how the funds were used in an inconsistent manner; indeed, "[a] litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements are false" is insufficient. *Metzler*, 540 F.3d at 1070; *see In re GlenFed*, 42 F.3d at 1552

(securities fraud complaints must set forth the "reasons for [the statements'] falsity").

### ii. Scienter

Scienter is a "mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) (citations omitted). A "strong inference" of scienter exists "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Glazer II*, 63 F.4th at 766 (quoting *Tellabs, Inc.*, 551 U.S. at 324). The PSLRA requires that securities fraud plaintiffs "plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *Livid Holdings,* 416 F.3d at 948 (quoting *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)).

Allegations of scienter, Ebrahim contends, must be supported by evidence of "specific information" showing Ebrahim had actual knowledge and an intent to deceive as to "each" allegation. (Docs. 31 at 16; 33 at 10). However, courts in this circuit conduct a dual inquiry to determine whether this standard is met: first, the court determines whether any individual allegation is sufficient; second, if no individual allegation is sufficient, the court conducts a "holistic" review of the

complaint to assess whether the combination of allegations rise to a strong inference of scienter. *Glazer II*, 63 F.4th at 766. Ebrahim, therefore, misses the second step in this inquiry. Where no individual allegation is satisfactory, the court considers whether the totality of the allegations create a strong inference of scienter. *Glazer II*, 63 F.4th at 766.

PLC again analogizes this case to *Livid Holdings*. There, the court found that the plaintiff had sufficiently pled scienter by alleging that the defendant had a motive to misrepresent and knew the statement's most obvious interpretation was false when made. *Livid Holdings*, 416 F.3d at 948. Here, PLC alleges that Ebrahim "made the misrepresentations or omissions either intentionally or with deliberate recklessness to deceive, manipulate or defraud the Plaintiffs into investing a substantial amount into AHI." (Doc. 26, ¶ 28). Like *Livid Holdings,* this statement, in combination with the specific examples of Ebrahim's misrepresentations or omissions contained in Paragraphs 10(a), (b), and (e) of the FAC, establishes a strong inference of at least deliberate recklessness.

### iii.  Loss Causation

The causation requirement includes "both transaction causation, that the violations in question caused the plaintiff to engage in the transaction, and loss causation, that the misrepresentation or omissions caused the harm." *Binder v. Gillespie,* 184 F.3d 1059, 1063 (9th Cir. 1999). In the context of a private stock

offering, plaintiffs may prove loss causation by showing that they purchased the security at an artificially inflated price and the misrepresentation or omission caused the loss sustained. *Livid Holdings*, 416 F.3d at 949, FN 2. Like other elements of proof in a federal securities fraud claim, the plaintiff must plead loss causation with particularity. *Or. Pub. Emp's Ret. Fund. v. Apollo Group Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

PLC once again draws a comparison to *Livid Holdings*. (Doc. 32 at 22). Like *Livid Holdings*, PLC argues, Ebrahim's misrepresentations and omissions concealed AHI's financial situation, and as a result of that financial situation and AHI's subsequent bankruptcy, PLC lost the entire value of its investment. (Doc. 32 at 22).

Ebrahim attempts to distinguish *Livid Holdings* by arguing that timing is "highly probative of loss causation", and PLC has failed to account for the period between the 2019 alleged misrepresentations and the 2022 bankruptcy. (Doc. 31 at 22–23). Where the time period is "more attenuated", Ebrahim argues, more is needed to demonstrate that the misrepresentation proximately caused the economic loss. (Doc. 31 at 22). Ebrahim relies on *Strategic Diversity, Inc. v. Alchemix Corp.* to make this argument. 2013 WL 4511971 (D. Ariz. Aug. 28, 2013). There, the court stated that the company in *Livid Holdings* went bankrupt "soon after" the plaintiff invested; however, *Livid Holdings* only noted the plaintiff "eventually"

went bankrupt. *Livid Holdings*, 416 F.3d at 949. The Court disagrees that *Livid Holdings* stands for the proposition that timing is "highly probative of loss causation." (Doc. 31 at 22).

Ebrahim further argues PLC fails to account for the numerous interim factors that may have contributed to AHI's decline. (Doc. 31 at 23). However, as Ebrahim himself observes, "[i]nsofar as the complaint alleged a misrepresentation about the company's financial situation, and that misrepresentation precipitated the company's bankruptcy, that was sufficient to establish loss causation." (Doc. 31 at 21–22) (citing *Livid*, 416 F.3d at 949). A pleading that accounts for and rejects alternative factors is not required. Therefore, the Court finds that PLC has sufficiently pled loss causation.

### iv.  Control Person Liability

In Count II of the FAC, PLC alleges control person liability under Section 20(a) of the 1934 Exchange Act, 15 U.S.C. § 78t. (Doc. 26, ¶ 36). Derivative liability under Section 20(a) is established where (1) there is a primary violation of the Exchange Act and (2) the defendant directly or indirectly controls any person liable for that violation. *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011).

PLC only alludes to other individuals, Ebrahim argues, and therefore fails to identify the "primary violator" for whose conduct Ebrahim is responsible. (Doc. 31 at 24). The Court disagrees. Control person liability requires that there be a

primary violation of the Exchange Act—it does not require, as Ebrahim argues, that PLC identify the "primary violator." *See NVIDIA*, 768 F.3d at 1052 ("To establish a cause of action under [Section 20(a)], a plaintiff must prove a primary violation of underlying federal securities laws, [] and then show that the defendant exercised actual power over the primary violator."). As discussed above, PLC has pled with sufficient particularity several violations of the Securities Act; in the event Ebrahim denies authorship over the materials containing misstatements, PLC argues that Ebrahim is a control person as it relates to those materials. (Docs. 32 at 25; 26, ¶¶ 33–37).

Alternatively, Ebrahim argues, PLC fails to establish Ebrahim was a control person within AHI. (Doc. 31 at 24). Ebrahim cites *SEC v. Todd* to suggest that "[t]he fact that a person is a CEO or other high ranking officer within a company does not create a presumption that he or she is a 'controlling person'" and "[w]hether [the defendant] is a controlling person is a factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." 642 F.3d 1207, 1223 (9th Cir. 2011).

However, Ebrahim's selection of quotes fails to paint the whole picture. In *Todd*, the Ninth Circuit goes on to explain that "actual authority over preparation and presentation to the public of financial statements is sufficient to demonstrate

control." *Todd*, 642 F.3d at 1223. Furthermore, although "[a] director is not automatically liable as a controlling person," a defendant's director status acts as a "red light" to the court. *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1396–97 (9th Cir. 1993). Here, PLC alleges that Ebrahim, the CEO of AHI, solicited Plaintiffs to invest and presented solicitation materials during the 2019 investor presentation. (Doc. 26 ¶¶ 8, 10(a)–(f)). In consideration of the above, the Court finds PLC has sufficiently pled control person liability.

## IV.    Conclusion

For the foregoing reasons,

IT IS ORDERED that (1) Defendant's Rule 12(b)(1) Motion to Dismiss (Doc. 14) be DENIED as moot and (2) Defendant's Rule 12(b)(6) and 15 U.S.C. § 78u-4(b)(3)(A) Motion to Dismiss (Doc. 30) be GRANTED in part and DENIED in part, as set forth above.

//

//

//

//

//

//

//

IT IS FURTHER ORDERED that Plaintiff is granted leave to amend the allegations set forth in Paragraphs 10(c), (d), and (f) of the First Amended Complaint (Doc. 26). Plaintiff shall file a second amended complaint on or before 14 days from the date of electronic filing of this Order. Defendant shall file a responsive pleading on or before 14 days from the electronic filing of Plaintiff's second amended complaint.

DATED this 9th day of January, 2024.

Kathleen L. DeSoto
United States Magistrate Judge