Trent M. Gardner
Jeffrey J. Tierney
Hannah S. Willstein
**GOETZ, GEDDES & GARDNER, P.C.**
35 North Grand Ave.
P.O. Box 6580
Bozeman, MT 59771-6580
Ph:     (406) 587-0618
Fax:    (406) 587-5144
Email:  tgardner@goetzlwfirm.com
        jtierney@goetzlawfirm.com
        hwillstein@goetzlawfirm.com

Attorneys for Ali Ebrahim

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA, BILLINGS DIVISION

| | |
|---|---|
| POETIC LICENSE CAPITAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALI EBRAHIM and JOHN DOES 1-10, <br><br> Defendants. | Cause No. CV-22-99-BLG-SPW-KLD <br> Hon. Kathleen L. DeSoto |
| ALI EBRAHIM, <br><br> Third-Party Plaintiff and <br> Counterclaim Defendant, <br><br> v. <br><br> YAHYA "JOHN" PIRACHA, <br><br> Third-Party Defendant <br> and Counterclaimant. | **Ebrahim's Brief in Support of his Rule 12(b)(1), 12(b)(6) and 12(b)(7) Motion to Dismiss Counterclaims and Third-Party Claims of Yahya "John" Piracha** |

YAHYA "JOHN" PIRACHA,

       Third-Party Plaintiff,

  v.

SHAN JAMAL, ALI THARIA and
JOHN DOES 1–10,

       Third Party Defendants.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. 4

EXHIBIT LIST ............................................................................... 8

INTRODUCTION ........................................................................... 9

BACKGROUND.............................................................................10

DISCUSSION ................................................................................ 17

I.    Piracha cannot assert AHI's rights, even derivatively,
      in a case where AHI is not a party. ................................................ 17

II.   Piracha cannot proceed derivatively, under Montana law,
      for failure to make demand on AHI. ...............................................18

III.  Piracha's attempted derivative claims remain under the jurisdiction
      of the bankruptcy court and he lacks standing for failure to obtain
      necessary bankruptcy court permission to pursue them derivatively. ..........19

IV.   The Court should award Ebrahim his attorney's fees incurred in
      bringing this motion and defending against Piracha's improper
      unauthorized derivative claims...................................................29

CONCLUSION................................................................................29

CERTIFICATE OF COMPLIANCE ................................................... 31

# TABLE OF AUTHORITIES

## CASES

*In re American Harvest, Inc.*,
    No. 22-10031 (Bankr. D. Mont.) ............................................................*passim*

*Biltmore Assocs. v. Twin City Fire Ins. Co.*,
    572 F.3d 663 (9th Cir. 2009) ................................................................19-20

*Capriati Constr. Corp. v. SPER, Inc. (In re Capriati Constr. Corp.)*,
    2018 Bankr. LEXIS 818 (9th Cir. B.A.P. Mar. 20, 2018) ............................20

*Catalano v. Comm'rs of Int. Rev.*,
    279 F.3d 682 (9th Cir. 2002).........................................................................23

*Cigna Ins. Co. v. Gulf U.S. Corp.*,
    1997 U.S. Dist. LEXIS 23816 (D. Idaho Sep. 11, 1997) ..........................19, 21

*Cohen v. Nw. Growth Corp.*,
    385 F.Supp.2d 935 (D.S.D. 2005) ..........................................................20, 27

*Dallas Cabana, Inc. v. Hyatt Corp.*,
    441 F.2d 865 (5th Cir. 1971) ........................................................20, 23, 26, 27

*Delgado Oil Co., Inc. v. Torres*,
    785 F.2d 857 (10th Cir. 1986) .......................................................................19

*Diaz v. Davis (In re Digimarc Corp. Deriv. Litig.)*,
    549 F.3d 1223 (9th Cir. 2008) ......................................................................17

*Double X Ranch v. Savage Bros.*,
    167 Mont. 231, 536 P.2d 1176 (Mont. 1975) ................................................25

*Estate of Spirtos v. One San Bernardino Cnty. Sup. Ct.*,
    443 F.3d 1172 (9th Cir. 2006) ......................................................................20

*Franklin Sav. Corp. v. Office of Thrift Supervision*,
    213 B.R. 596 (D. Kan. 1997) ........................................................................20

*Gabayzadeh v. Taylor*,
    2009 U.S. Dist. LEXIS 83636 (E.D.N.Y. Sep. 14, 2009) ...................... 23, 27

*In re Greenwood Supply Co.*,
    295 B.R. 787 (Bankr. S.C. 2002) .................................................................20

*Hanrahan v. Anderson*,
    108 Mont. 218, 90 P.2d 494 (Mont. 1939) .................................................. 17

*Husvar v. Rapoport*,
    430 F.3d 777 (6th Cir. 2005) .......................................................................20

*In re ITC Grain International, Inc.*,
    No. 22-10063 (Bankr. D. Mont.) ................................................................ 10

*iXL Enters v. GE Capital Corp.*,
    167 Fed App'x 824 (2d Cir. 2006) .............................................................28

*In re JJ Arch LLC*,
    2024 WL 2928033 (Bankr. S.D.N.Y. Jun. 10, 2024)................................... 21

*Johnston v. Webster (In re Johnston)*,
    49 F.3d 538 (9th Cir. 1995).........................................................................22

*Kleinschmidt v. Am. Mining Co.*,
    49 Mont. 7, 139 P. 785 (Mont. 1914).......................................................... 17

*Koster v. Lumbermens Mut. Cas. Co.*,
    330 U.S. 518 (1947) ..................................................................................... 17

*Liberty Mut. Ins. Co. v. Off. Unsec. Cred. Comm. (In re Spaulding Comp. Co.)*,
    207 B.R. 899 (9th Cir. B.A.P. 1997)............................................................22

*Maloof v. BT Comm. Corp.*,
    2008 U.S. Dist. LEXIS 21318 (N.D. Ohio, Mar. 5, 2008) ..........................28

*Mitchell Excav., Inc. v. Mitchell*,
    734 F.2d 129 (2d Cir. 1984)...................................................... 19, 22, 23, 27

*In re Pena,*
　　974 F.3d 934 (9th Cir. 2020) ........................................................................ 23

*In re Roman Catholic Bishop of Great Falls,*
　　584 B.R. 335 (Bankr. D. Mont. 2018) .................................................... 21, 22

*Ross v. Bernhard,*
　　396 U.S. 531, 538 (1970) .............................................................................. 17

*Schaffer v. CC Inv. 's,*
　　286 F.Supp.2d 279 (S.D.N.Y. 2003) ...........................................................20

*Seinfeld v. Allen,*
　　169 Fed. App'x 47 (2d Cir. 2006) ........................................................*passim*

*Skolnick v. Atl. Gulf Comm. Corp. (In re Gen. Dev. Corp.),*
　　179 B.R. 335 (S.D. Fla. 1995) ................................................................*passim*

*In re Valley Park,*
　　217 B.R. 864 (Bankr. D. Mont. 1998) .......................................................... 21

*First Union Comm. Corp. v. Nelson, Mullins, Riley & Scarborough*
　　*(In re Varat Enterp., Inc.),*
　　81 F.3d 1310 (4th Cir. 1996) ........................................................................ 25

*In re WorldCom, Inc.,*
　　351 B.R. 130 (Bankr. S.D.N.Y. 2006) ........................................... 21, 24, 25, 27

## STATUTES

11 U.S.C. § 541 ................................................................................................. 19

11 U.S.C. § 554 ........................................................................................... 22, 23

11 U.S.C. § 1104 ............................................................................................... 11

11 U.S.C. § 1107 ...............................................................................................20

11 U.S.C. § 1141 ................................................................................................24

11 U.S.C. § 1181 ................................................................................................10

11 U.S.C. § 1183 ............................................................................................11, 27

11 U.S.C. § 1184 ................................................................................................20

11 U.S.C. § 1185 ................................................................................................27

11 U.S.C. § 1193 ................................................................................................25

15 U.S.C. § 78u-4 ..............................................................................................29

Mont. Code. Ann. § 35-14-140 ........................................................................29

Mont. Code. Ann. § 35-14-742 ........................................................................18

Mont. Code. Ann. § 35-14-746 ........................................................................29

**EXHIBIT LIST**

E-mail chain beginning Feb. 5, 2025…………………………………………….Ex. 1

## INTRODUCTION

Defendant/Third-Party Plaintiff/Counterclaim Defendant Ali Ebrahim ("Ebrahim") seeks dismissal of claims recently asserted by Third-Party Defendant/Counterclaimant/Third-Party Plaintiff Yahya "John" Piracha ("Piracha"). Piracha's new claims are only collaterally relevant to the original securities cause of action in this case, remain under the jurisdiction of the bankruptcy court, and are unauthorized and improper derivative claims.

Piracha attempts to sue Ebrahim and others derivatively based on statutory claims for corporate mismanagement, alleged deceit related to matters of corporate governance, and breach of corporate contracts. These claims belong, not to Piracha himself, but to American Harvest, Inc. ("AHI"). As this Court knows, AHI has undergone a Chapter 11 liquidation bankruptcy which remains open under the retained jurisdiction of Judge Hursh. Piracha's claims are unscheduled pre-petition claims that, if meritorious, should have been raised and dealt with *years ago* in the bankruptcy case and if they survive today at all—which is a question the bankruptcy court must answer—they belong to AHI and all of its shareholders. Piracha, individually, lacks standing to assert AHI's claims for his own benefit in a case where AHI is not a party and when he has never brought these matters before the bankruptcy court. Piracha has had nearly four months to investigate and

attempt to secure the approval of the bankruptcy court but he has made no effort to do so. Meanwhile, this matter lingers and grows increasingly procedurally complex.

Piracha's claims should be dismissed: under Rule 12(b)(1) because they remain subject to bankruptcy court jurisdiction; under Rule 12(b)(6) for lack of standing because, without bankruptcy court approval, Piracha lacks authority to pursue unabandoned pre-petition claims derivatively or otherwise; under Rule 12(b)(6) for failure to comply with statutory prerequisites for derivative litigation including failure to make demand on AHI to pursue the claims directly; and under Rule 12(b)(7) because even a properly authorized derivative claim could not proceed in the absence of AHI which is the real party in interest.

## BACKGROUND

AHI filed for bankruptcy on March 25, 2022. *See In re American Harvest, Inc.*, No. 22-10031 (Bankr. D. Mont.). AHI's bankruptcy was substantively consolidated with the bankruptcy of a subsidiary entity, *In re ITC Grain International, Inc.*, No. 22-10063 (Bankr. D. Mont.). The consolidated AHI bankruptcy proceeded under Chapter 11, Subchapter V of the Bankruptcy Code. *See* No. 22-10031 (Doc. 46).

Subchapter V (11 U.S.C. § 1181, *et seq.*) is a relatively new, special procedure created by the Small Business Reorganization Act of 2019. It provides a streamlined

process for qualifying Chapter 11 small business bankruptcies. *See*

*https://www.justice.gov/ust/subchapter-v*. Like other Chapter 11 cases, the debtor

(referred to as the "debtor-in-possession" or "DIP") remains in control of the

business and navigates the bankruptcy process including developing and

implementing a plan of reorganization or liquidation and handling any related

litigation, all under the supervision of the bankruptcy court.

 In a typical Chapter 11 case, there is no trustee unless the bankruptcy court

appoints one out of concern that the DIP is mismanaging the estate's affairs, in

which case the trustee assumes control over the debtor's business and the

bankruptcy process, including any litigation affecting the bankruptcy estate. *See* 11

U.S.C. § 1104. In contrast, a trustee is appointed in *every* Subchapter V bankruptcy.

But the Subchapter V trustee (unlike in a Chapter 7 or traditional Chapter 11 case)

acts as a "non-operating" trustee, helping facilitate the development of a fair and

consensual plan while the DIP remains in possession of the business and continues

to exercise control over the estate under court supervision. *See* 11 U.S.C. § 1183.

 AHI, as debtor-in-possession, developed and submitted a Subchapter V plan

which ultimately called for liquidation rather than reorganization due to AHI's lack

of ongoing business operations. *See In re AHI*, No. 22-10031 (Doc. 41). One of

AHI's creditors, investor Poetic License Capital, Inc. ("PLC"), raised an objection

(Doc. 96) which was resolved by a stipulation to amend certain provisions of the plan (Doc. 110). The plan was then confirmed by order of the bankruptcy court on December 1, 2022 and AHI was granted a discharge (Doc. 132). The DIP filed a notice of substantial consummation of the liquidation plan on January 20, 2023, whereby the services of the non-operating trustee were terminated (Doc. 150).

Pursuant to the stipulation with PLC and under the confirmed liquidation plan, the bankruptcy court expressly retained jurisdiction over related claims and issues affecting the plan, including "hearing and adjudicating the claims and defenses of any adversary proceeding within the jurisdiction of the Bankruptcy Court commenced prior to or after confirmation by Debtors, PLC or by any duly appointed trustee" and "[h]earing and adjudicating the issues and defenses in any contested matter filed by the Debtors, Poetic License, or any trustee pre-confirmation or post-confirmation" (Docs. 110, 113).

Yahya "John" Piracha, AHI's former CEO, worked with AHI's counsel and supplied documents and information to prepare the bankruptcy schedules,[1] but he never suggested that AHI had or should consider pursuing claims against Ebrahim. AHI's Schedule A/B, which Piracha helped prepare, includes a disclosure of all

---

[1] This particular fact is perhaps outside the Rule 12 record, but the issues it relates to are matters for the bankruptcy court.

potential "[c]auses of action against third parties (whether or not a lawsuit has been filed)" but does not list any such claims. *In re AHI*, No. 22-10031 (Doc. 111), p.6, part 11, ¶ 74. Piracha never suggested to the bankruptcy court that there were overlooked legal claims or unaddressed estate property, nor did he express any concern about potential conflicts of interest concerning Ali Ebrahim, the successor CEO, directing AHI's affairs as DIP. Piracha did not object to the liquidation plan or any aspect of the bankruptcy proceeding. *See generally In re AHI*, No. 22-10031.

Concurrent with its objection in the bankruptcy, PLC filed this lawsuit, bringing securities fraud claims against Ebrahim initially under state law (Doc. 1) and then under federal law to cure a jurisdictional defect (Doc. 26, First Amended Complaint). Ebrahim filed a motion to dismiss which was granted in part, resulting in PLC paring down its complaint and dropping some of its claims that were not well pleaded (Doc. 35, Second Amended Complaint).

Ebrahim impleaded Piracha as a third-party defendant for purposes of potential contribution and apportionment of liability on PLC's claims (Doc. 39). Piracha filed a motion for a more definite statement which was denied (Doc. 55). In response, Piracha indicated his intent to join additional parties (Doc. 57) so this Court held a status conference where the parties discussed Piracha's further potential claims—evidently derivative ones—and his plan for joinder and the

complications presented by the AHI bankruptcy. The Court held further

scheduling in abeyance and directed Piracha to update the Court concerning his

efforts to ascertain his obligations in the bankruptcy proceeding before bringing his

anticipated derivative claims in this case (Doc. 59, 60).

On December 23, 2024, Piracha filed his first status report, stating:

> A review of pertinent case law indicates that as a result of
> the bankruptcy, the derivative claims now belong to the
> bankruptcy estate and are subject to the control of the
> bankruptcy court. Therefore, **before Piracha can assert**
> **and pursue these claims, he must obtain permission to**
> **do so from** both the bankruptcy trustee and **the bank-**
> **ruptcy court**.

> The undersigned intends to contact the bankruptcy
> Trustee, Mr. Gary Rainsdon, to discuss the claims and
> whether Rainsdon will agree to abandon and assign the
> claims to Piracha. Following that contact, the undersigned
> intends to submit a filing to the bankruptcy court seeking
> approval to pursue the claims.

(Doc. 61) (emphasis added). Piracha thus determined—correctly—that he needed

bankruptcy court approval. But, perhaps not appreciating the unique features of a

Subchapter V proceeding, including that Mr. Rainsdon was a non–operating trustee

and had already been discharged from this role, Piracha erroneously concluded that

the trustee had a say in the matter.

Notwithstanding the first status report and the above-stated plan, it appears

Piracha did not take any further steps to obtain bankruptcy court approval. *See*

*generally In re AHI*, No. 22-10031.

Piracha filed a further status report on February 3, 2025 (Doc. 62), indicating that Mr. Rainsdon disclaimed authority to give Piracha permission. As explained above, he was a non-operating trustee and never had that authority. Piracha further stated he had determined that, because AHI had not pursued the potential claims in its bankruptcy, Piracha was free to do so himself—apparently forgetting the issue of bankruptcy court approval. *Id.*

Ebrahim's counsel wrote, in response, advising of the need for bankruptcy court approval and seeking information about the anticipated claims to better assess whether they belong to AHI or its bankruptcy estate. Piracha eventually responded, approximately a month later and *after* filing his derivative claims. He reiterated his position that because the DIP had discretion to decide what claims to pursue, AHI's failure to identify and pursue these claims "satisfies the requirement to show abandonment, which allows a shareholder to pursue derivative claims." Ex. 1. (e-mail chain beginning Feb. 5, 2025).

The claims that Piracha ultimately filed in this case (Doc. 63) appear to have little to do with PLC's original complaint. Piracha has asserted, as counterclaims against Ebrahim's third-party claim for contribution, various statutory claims for breach of corporate director and officer duties (Counts I–II). These claims

essentially allege mismanagement and conflicts of interest by Ebrahim, focusing on his refusal to invest more money in AHI, or to solicit further outside investments, once the company was determined to be insolvent. Piracha also brings a counterclaim for deceit (Count III), alleging that Ebrahim tricked Piracha into amending AHI's Articles of Incorporation to increase Ebrahim's control over the company. Finally, Piracha brings claims against new third-party defendants Ali Tharia and Shan Jamal for breach of contract with AHI. Upon information and belief, Tharia and Jamal are foreign nationals, so their joinder revives the issues and attendant delays that plagued the start of this case concerning service of process and navigating international treaties to domesticate foreign subpoenas.

In summary, this case has been pending for approximately two and a half years and the pleadings are not yet closed. Piracha now seeks to bring new claims about collateral issues which belong to AHI, which should have been raised years ago in the bankruptcy case, and invite substantial additional confusion and delay of these proceedings. This Court recently set a preliminary pretrial conference and deadlines for pretrial exchanges, but additional parties have now been impleaded who likely cannot readily be served. After months of additional delay, Piracha has not even begun to try to secure bankruptcy court approval to pursue AHI's claims which remain under bankruptcy court jurisdiction.

## DISCUSSION

I.  **Piracha cannot assert AHI's rights, even derivatively, in a case where AHI is not a party.**

To start, Piracha's claims are facially deficient because AHI is not a party in this case. "The claim pressed by the stockholder against directors or third parties 'is not his own but the corporation's.'... The corporation is a necessary party to the action; without it the case cannot proceed. Although named a defendant, it is the real party in interest, the stockholder being at best the nominal plaintiff. The proceeds of the action belong to the corporation and it is bound by the result of the suit." *Ross v. Bernhard*, 396 U.S. 531, 538 (1970) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 (1947)); *accord Diaz v. Davis (In re Digimarc Corp. Deriv. Litig.)*, 549 F.3d 1223, 1234 (9th Cir. 2008); *Hanrahan v. Anderson*, 108 Mont. 218, 90 P.2d 494 (Mont. 1939) ("In all suits brought by a stockholder in behalf of the corporation and for its benefit, the corporation is a necessary party, either plaintiff or defendant."); *Kleinschmidt v. Am. Mining Co.*, 49 Mont. 7, 139 P. 785 (Mont. 1914) ("Of course" it is necessary to make the company a party "for, though the action is prosecuted by the plaintiffs, and plaintiffs and defendants are the real adversary parties, it is prosecuted for the benefit of the company.").

An individual shareholder simply cannot sue upon the corporation's contracts, or sue its leadership for alleged negligence or misconduct, in the absence

of the corporation itself.

## II.   Piracha cannot proceed derivatively, under Montana law, for failure to make demand on AHI.

Piracha did not make prior demand on AHI to pursue these claims. Tailoring his allegations to Federal Rule of Civil Procedure 23.1, Piracha pleads futility as his reason for not demanding direct corporate action before suing derivatively. (Doc. 63, pp. 21, Rule 23.1 Statement of Compliance).

However, under substantive Montana state law in effect both at the time of the events giving rise to Piracha's claims and when he filed them, this is insufficient to establish shareholder derivative standing in a Montana business corporation. A shareholder seeking to pursue derivative claims "may not" bring suit until it has made a "written demand" on the corporation to act upon the matter and "90 days have expired from the date delivery of the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period." Mont. Code. Ann. § 35-14-742. There is no futility exception.

Piracha did not plead and cannot prove that these requirements are met. He did not make a demand and did not invoke either exception, i.e. prior rejection or irreparable harm. Piracha's statement of futility *perhaps* satisfies federal pleading

requirements under Rule 23.1 but it does not discharge his mandatory statutory

obligations, under state law, before suing derivatively.

## III. Piracha's attempted derivative claims remain under the jurisdiction of the bankruptcy court and he lacks standing for failure to obtain necessary bankruptcy court permission to pursue them derivatively.

"A corporation's filing for bankruptcy cuts off a shareholder's ability to

bring a derivative claim. The commencement of a bankruptcy case creates an estate

for the benefit of creditors which encompasses 'all legal or equitable interests of the

debtor in property as of the commencement of the case.'" 11 U.S.C. § 541(a)(1).

The bankruptcy estate includes all legal claims owned by corporate debtor,

including derivative actions brought by shareholders." *Skolnick v. Atl. Gulf Comm.*

*Corp. (In re Gen. Dev. Corp.)*, 179 B.R. 335, 338 (S.D. Fla. 1995) (citing *Mitchell*

*Excav., Inc. v. Mitchell*, 734 F.2d 129 (2d Cir. 1984)); *see also Delgado Oil Co., Inc. v.*

*Torres*, 785 F.2d 857, 860 (10th Cir. 1986) (a bankruptcy filing "instantly alters the

rights of a corporation and its creditors[,]" including as to claims against corporate

management that, pre-petition, might have been enforceable by a shareholder

derivative action); *Cigna Ins. Co. v. Gulf U.S. Corp.*, 1997 U.S. Dist. LEXIS 23816

at *13 (D. Idaho Sep. 11, 1997) ("[O]nce relief is sought under Chapter 11,

shareholders and creditors are precluded from asserting a derivative action against

directors and officers of the corporation"), *overruled on other grounds by Biltmore*

*Assocs. v. Twin City Fire Ins. Co.*, 572 F.3d 663 (9th Cir. 2009); *accord In re*

*Greenwood Supply Co.*, 295 B.R. 787, 794 (Bankr. S.C. 2002) (bankruptcy "cuts off"

derivative claims); *Schaffer v. CC Inv.'s*, 286 F.Supp.2d 279, 281 (S.D.N.Y. 2003)

(same); *Franklin Sav. Corp. v. Office of Thrift Supervision*, 213 B.R. 596, n.4 (D.

Kan. 1997) (same); *Cohen v. Nw. Growth Corp.*, 385 F.Supp.2d 935, 965 (D.S.D.

2005) (same).

 "The bankruptcy trustee—or, as in this case, the debtor in possession—is

vested with title to all assets of the estate and becomes the estate's legal

representative" with *exclusive* standing to prosecute all such claims.[2] *Skolnick*, 179

B.R. at 338 (citing *Dallas Cabana, Inc. v. Hyatt Corp.,* 441 F.2d 865, 866-67 (5th

Cir. 1971)); *Estate of Spirtos v. One San Bernardino Cnty. Sup. Ct.*, 443 F.2d 1172,

1176 (9th Cir. 2006) ("[T]he bankruptcy code endows the bankruptcy trustee with

the exclusive right to sue on behalf of the estate."); *Capriati Constr. Corp. v. SPER,*

*Inc. (In re Capriati Constr. Corp.)*, 2018 Bankr. LEXIS 818, at *25 (9th Cir. B.A.P.

Mar. 20, 2018) (unless otherwise ordered by the bankruptcy court, a Chapter 11

DIP has "exclusive standing to sue on causes of action that were property of the

estate"); *Husvar v. Rapoport*, 430 F.3d 777, 780 (6th Cir. 2005) (rejecting derivative

---

[2] *See* 11 U.S.C. §§ 1107 (in a Chapter 11 case, a debtor-in-possession shall have the rights, powers, and shall perform the functions and duties of a trustee except as otherwise ordered or provided by law); 11 U.S.C. §§ 1184 (for Subchapter V cases).

shareholder standing in a Chapter 11 bankruptcy because "only the debtor-in-possession … can prosecute such a claim."); *In re JJ Arch LLC*, 2024 WL 2928033, n. 10 (Bankr. S.D.N.Y. Jun. 10, 2024) ("because these derivative actions are property of the estate, they are assertable exclusively by the Debtor."); *Cigna*, 1997 U.S. Dist. LEXIS 23816 at *13 ("Any claim that could have been brought pre-petition in a derivative action by shareholders or creditors becomes the property of the estate, and can only be asserted by the debtor-in-possession.").

A stockholder may assert a corporate debtor's claims only "under limited circumstances." *In re WorldCom, Inc.*, 351 B.R. 130, 134 (Bankr. S.D.N.Y. 2006).

For example, if a bankruptcy trustee or DIP unjustifiably refuses to pursue a meritorious claim, an interested party—usually a creditors' committee—can seek an order from the bankruptcy court granting derivative standing to pursue the matter on behalf of the estate. *In re Roman Catholic Bishop of Great Falls*, 584 B.R. 335, 338 (Bankr. D. Mont. 2018); *see also WorldCom*, 351 B.R. at 132 (the right to bring derivative claims remains with the DIP "[a]bsent an order of the bankruptcy court allowing [a shareholder] to pursue these claims on the corporation's behalf" (quoting *Seinfeld v. Allen*, 169 Fed. App'x 47, 50 (2d Cir. 2006))); *In re Valley Park*, 217 B.R. 864, 866–67 (Bankr. D. Mont. 1998) (a party dissatisfied with a DIP's lack of action on a potential claim "may petition the court to compel the debtor-in-

possession to act or gain court permission to institute the action itself.") (quoting *Liberty Mut. Ins. Co. v. Off. Unsec. Cred. Comm. (In re Spaulding Comp. Co.)*, 207 B.R. 899, 903 (9th Cir. B.A.P. 1997))).

In other words, "in appropriate situations **the bankruptcy court may allow** a party other than the trustee or debtor-in-possession to pursue the estate's litigation." *Liberty Mut.*, 207 B.R. at 903 (emphasis added). Because court approval is required, a would-be alternative plaintiff "**must petition the bankruptcy court before proceeding derivatively**." *Seinfeld*, 169 Fed. App'x at 49 (emphasis added) (citing *Mitchell Excav.*, 734 F.2d at 131).[3]

The same is true for claim *abandonment*, as Piracha characterizes this situation.[4] Ex. 1. "A debtor in possession may surrender its exclusive right to pursue the estate's legal claims if it voluntarily abandons them or is ordered by a bankruptcy court to abandon them" but "[i]n either situation '**some proceeding in**

---

[3] Proper considerations, on a motion for leave to separately pursue an estate claim based on derivative standing, include: (1) whether a demand to pursue the claim was made on the trustee/DIP; (2) whether it was declined; (3) whether a colorable claim that would benefit the estate exists; and (4) whether inaction is justified. *Roman Cath. Bishop of G.F.*, 584 B.R. at 338–39. These are determinations reserved for the bankruptcy court that it is uniquely situated to make.

[4] In contrast with creditor derivative standing to pursue a claim on behalf of the estate, abandonment reflects a judgment that an item of estate property, such as a potential legal claim, is of inconsequential value or an actual burden upon the estate such that it would benefit the creditors to remove it from the estate entirely. 11 U.S.C. § 554; *Johnson v. Webster (In re Johnston)*, 49 F.3d 538, 540 (9th Cir. 1995).

**the bankruptcy court must take place before a shareholder can assert [the abandoned derivative] right directly**.'" *Skolnick*, 179 B.R. at 338 (emphasis added) (citing *Mitchell Excav.*, 734 F.2d at 131).

Piracha suggests his attempted derivative claims have been effectively abandoned by the estate due to the DIP's failure to pursue them. Ex. 1.

However, a claim that belongs to the bankruptcy estate cannot be abandoned "by accident" or constructively by failure to pursue it. *In re Pena*, 974 F.3d 934, 939 (9th Cir. 2020); 11 U.S.C. § 554(a–b) ("After notice and a hearing" a trustee may abandon estate property or the bankruptcy court may order it abandoned); 11 U.S.C. § 554(d) (property that has not been administered or abandoned "remains property of the estate" unless otherwise ordered); *Catalano v. Comm'rs of Int. Rev.*, 279 F.3d 682, 686 (9th Cir. 2002) (rejecting the idea of "de facto abandonment" —abandonment requires formal proceedings in bankruptcy court); *Skolnick*, 179 B.R. at 338 (the DIP's failure to assert a claim, allegedly due to a conflict of interest, "does not permit a would-be plaintiff to bring suit without first petitioning the bankruptcy court for an order authorizing abandonment of the property" (citing *Dallas Cabana*, 441 F.2d at 868)); *Gabayzadeh v. Taylor*, 2009 U.S. Dist. LEXIS 83636, at *11 (E.D.N.Y. Sep. 14, 2009) (a trustee's decision not to pursue claim "does not constitute abandonment.").

While estate property reverts to the debtor upon plan confirmation, that is only true "except as otherwise provided in the plan." 11 U.S.C. § 1141(b). When the court retains jurisdiction over the execution of the plan and related claims, confirmation does not leave the company free to "go about its business without further supervision or approval" from the bankruptcy court. *WorldCom*, 351 B.R. at 133. This case involves a liquidation plan and the bankruptcy court expressly retained jurisdiction over matters impacting the plan and its execution for the benefit of AHI's creditors, including: "**hearing and adjudicating the claims and defenses of any adversary proceeding within the jurisdiction of the Bankruptcy Court commenced prior to or after confirmation by Debtors, Poetic License, or by any duly appointed trustee**" and "**[h]earing and adjudicating the issues and defenses in any contested matter filed by the Debtors, Poetic License, or any trustee pre-confirmation or post-confirmation**." *In re AHI*, No. 22-10031 (Docs. 110, 113) (emphasis added).

Pre-petition derivative claims belonging to AHI clearly fall within the bankruptcy court's retained jurisdiction and impact the Chapter 11 plan, requiring the involvement and approval of the bankruptcy court for any such claims to proceed. *See also Seinfeld*, 169 Fed. App'x at 50 (notwithstanding § 1141(b) reversion of ownership of derivative claims not adjudicated in a Chapter 11

bankruptcy upon plan confirmation, a shareholder could not sue derivatively without bankruptcy court approval because the reorganized debtor corporation and its claims remained under the jurisdiction of the bankruptcy court).

Further complicating the matter and raising additional questions that arise under the bankruptcy court's jurisdiction, it is also doubtful whether Piracha's claims even *survive* and can be asserted at all—approximately five years after Piracha alleges he discovered them, three years after AHI filed bankruptcy, and more than two years after the liquidation plan was confirmed and substantially consummated. A Subchapter V plan generally cannot be modified after confirmation and substantial consummation except under limited circumstances, with good cause and bankruptcy court approval. *See* § 11 U.S.C. 1193; *see, e.g., WorldCom*, 351 B.R. at 134 (plan confirmation barred derivative claims that were not timely raised prior to confirmation and substantial consummation); *First Union Comm. Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enterp., Inc.)*, 81 F.3d 1310, 1315 (4th Cir. 1996) ("Parties may be precluded from raising claims or issues that they could have or should have raised before confirmation of a bankruptcy plan, but failed to do so."); *accord Double X Ranch v. Savage Bros.*, 167 Mont. 231, 536 P.2d 1176 (Mont. 1975) (confirmation of a Chapter 11 plan renders *res judicata* all pre-petition issues that could have been raised pre-confirmation).

These are questions over which the bankruptcy court has retained jurisdiction, relevant to its determination of whether AHI's claims can be pursued by Piracha and whether allowing that to occur is in the best interests of AHI's creditors.

Piracha's problem is largely self-imposed and he was not without remedies had he been more diligent.

To start, if these claims are meritorious, he could have pursued them prior to AHI's bankruptcy when he was the CEO of the company.

Post-petition, he could have sought to include these claims on AHI's bankruptcy schedules and made demand upon the DIP to pursue them in the bankruptcy.

Failing that, he could and should have timely "petition[ed] the bankruptcy court to compel the [DIP] to bring suit" or sought creditor derivative standing, by bankruptcy court order, to pursue the claims himself. *Dallas Cabana*, 441 F.2d at 868 ("Without such authorization," the claimant "could not maintain the cause of action."); *Skolnick*, 179 B.R. at 340 (if a shareholder believes a DIP has a conflict and is not pursuing meritorious claims that would add value to the estate, the appropriate course is "*not* … to bypass the bankruptcy court" but to petition the bankruptcy court for relief).

If Piracha thought the DIP had a conflict of interest because AHI had claims

against Ebrahim, as Piracha now suggests, he could have brought that to the attention of the bankruptcy court and sought removal of the DIP or to expand the role of the Subchapter V trustee. 11 U.S.C. §§ 1183, 1185.

Piracha also could and should have objected to the plan before it was confirmed and consummated back in 2022.

He did none of these things.

Even after raising these issues for the first time in the fall of 2024 and initially acknowledging, quite correctly, that the derivative claims belong to the bankruptcy estate and required court permission for him to bring them (Doc. 61), Piracha took no steps to advise the bankruptcy court of the existence of potential unaddressed estate property or to obtain permission to sue derivatively. Instead, he changed course and wrongly concluded he was excused from seeking permission (Doc. 62) which deprives him of standing to sue in AHI's stead.

Any such proceedings, brought by a shareholder on behalf of the debtor corporation or seeking leave to take legal action on the debtor's behalf and concerning its property, "should take place, in the first instance, in the bankruptcy court." *WorldCom*, 351 B.R. at 134 (quoting *Mitchell Excav.*, 734 F.2d at 132). Failure to do so requires dismissal for lack of standing. *See*, *e.g.*, *Skolnick*, *Seinfeld*, *Dallas Cabana*, *Cohen*, and *Gabayzadeh*, *supra* (all dismissing, or affirming

dismissal, of derivative claims for lack of standing in the absence of bankruptcy court approval); *iXL Enters v. GE Capital Corp.*, 167 Fed App'x 824, 827 (2d Cir. 2006) (a shareholder cannot directly pursue a derivative action "without first procuring permission from the bankruptcy court"; where plaintiff had not raised the issue in bankruptcy court, "let alone received permission from it to pursue a derivative action[,]" it could not sue derivatively); *Maloof v. BT Comm. Corp.*, 2008 U.S. Dist. LEXIS 21318 at *11–12 (N.D. Ohio, Mar. 5, 2008) (failure to obtain bankruptcy court permission deprived plaintiffs of standing to bring derivative claims).

AHI's bankruptcy is under ongoing supervision of the bankruptcy court, which expressly retained jurisdiction under the plan that was confirmed more than two years ago. Piracha cannot, without bankruptcy court approval, assert claims that belong to AHI that were never brought to the bankruptcy court's attention. *See Seinfeld*, 169 Fed. App'x at 50 ("Given that the Chapter 11 bankruptcy proceedings remain open, Seinfeld is precluded from asserting a derivative action on WorldCom's behalf without first bringing a proceeding in the bankruptcy court"). Lying in wait until after the plan was confirmed and consummated to sue upon undisclosed pre-petition corporate claims that impact the estate and creditors' rights, without involving the bankruptcy court, is not permitted. Piracha lacks

standing to assert claims on behalf of AHI and his claims should be dismissed.

## IV.    The Court should award Ebrahim his attorney's fees incurred in bringing this motion and in defending against Piracha's improper and unauthorized derivative claims.

If the Court grants Ebrahim's motion, the Court should also order Piracha to pay Ebrahim's expenses including attorney's fees. Mont. Code. Ann. § 35-14-746(2)–(3) (expenses are awardable against the derivative plaintiff in proceedings commenced without reasonable cause or for improper purpose); Mont. Code. Ann. § 35-14-140(18) ("expenses," for purposes of this chapter, includes attorney fees); *see also* 15 U.S.C. § 78u-4 (procedures for mandatory Rule 11 review and mandatory sanctions and fee awards for abusive litigation conduct in a federal securities lawsuit). Piracha had fair warning. The law and the rules are clear and he has not even attempted to comply with them so fees should be awarded.

## CONCLUSION

Piracha's attempted derivative claims are subject to bankruptcy court jurisdiction, the real party in interest has not been joined, and Piracha lacks standing because he has not obtained necessary bankruptcy court approval nor complied with statutory pre-requisites to bring derivative claims.

This Court should dismiss and award fees to Ebrahim.

Respectfully submitted this 10th day of March, 2025.

GOETZ, GEDDES & GARDNER, P.C.,


By: _____
Trent M. Gardner
Jeffrey J. Tierney
Hannah S. Willstein

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d), the undersigned certifies that this brief is less than 6,500 words (4,862) excluding the caption, tables of contents and authorities, and this certificate of compliance.

By: _____
      Trent M. Gardner
      Jeffrey J. Tierney
      Hannah S. Willstein